**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MAYO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc., and Utz Brands, Inc.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michael Mayo (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc., and Utz Brands, Inc. (hereinafter "Defendants") with respect to the marketing and sales of Defendants' Boulder Canyon "Avocado Oil" and Good Health "100% Avocado Oil" products throughout the state of New York and throughout the country. The Boulder Canyon "Avocado Oil" and Good Health "100% Avocado Oil" products include the following products (hereinafter the "Products"):

- Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips;
- Good Health Kettle Style 100% Avocado Oil Potato Chips Sea Salt.

2. Defendants manufacture, markets, sells, and distributes the Products through a marketing and advertising campaign emphasizing that they are made with "avocado oil"—a premium ingredient widely recognized by consumers as a healthier source of dietary fat and valued for its nutritional profile and culinary qualities. However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain a blend of undisclosed oils rather than avocado oil alone, despite the packaging prominently identifying only avocado oil, thereby misleading reasonable consumers about the Products' composition.

3. Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Products' exclusive oil ingredient is "Avocado Oil" when purchasing the Products. Plaintiff and Class Members paid a premium for the Products based upon their "Avocado Oil" representation as the exclusive oil, rather than a blend of oils. Given that Plaintiff and Class Members paid a premium for the Products based on Defendants' misrepresentations that they exclusively contain the oil "Avocado Oil," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4. Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendants breached and continues to breach its warranties regarding the Products. Defendants have been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5. Consumers have become increasingly concerned about the quality and source of oils used in food products. Consumers increasingly seek products made with avocado oil because

it is widely regarded as a premium, healthier oil.[1] Companies such as Defendants have capitalized on consumers' desire for products purporting to exclusively contain "Avocado Oil." Indeed, consumers are willing to pay, and have paid, a premium for products branded as "Avocado Oil" over products that contain other oils. Reasonable consumers, including Plaintiff and Class Members, value products that contain avocado oil for important reasons, including the belief that it is a premium and healthier than alternative products.

6. Independent testing has concluded that Defendants' Products do not exclusively contain avocado oil as the oil ingredient despite the prominent "Avocado Oil" marketing of the Products. Lab testing confirms that the Products did not have the chemical composition exclusively of avocado oil and were chemically consistent with dilution or substitution by other oils.

7. Despite the Products containing additional oils, Defendants markets the Products as being made with "Avocado Oil." Several of the Products further reinforce this representation by expressly claiming they are made with "100% Avocado Oil." Several representations of Defendants Products' labeling are depicted below:

[1] https://www.healthline.com/nutrition/9-avocado-oil-benefits


EST. 1994
BOULDER
CANYON
CANYON CUT
NON GMO Project
VERIFIED
nongmoproject.org
AVOCADO OIL
CLASSIC SEA SALT
KETTLE STYLE POTATO CHIPS
CERTIFIED
GLUTEN FREE
NET WT. 5.25 OZ. (148.8g)


good health
ENJOY BEING GOOD™
MADE WITH
100%
AVOCADO OIL
· KETTLE CHIPS ·
AVOCADO OIL
· 30% LESS FAT THAN REGULAR POTATO CHIPS* ·
Sea Salt
LOW SODIUM
GLUTEN FREE
Enlarged to show detail
NON GMO Project VERIFIED
NET WT 5 OZ (141.7g)

8. Defendants' representations that the Products are made with "Avocado Oil" are false, misleading, and deceptive because the Products contain other oil ingredients.

**Defendants' Products Contain a Diluted Blend of Oils**

9. Despite being advertised as exclusively containing "Avocado Oil," Defendants' Products contain a diluted blend of oils.

10. A 2026 peer-reviewed study published in *Applied Food Research*, researchers from the University of California Davis evaluated the authenticity of avocado oil used as the sole declared oil ingredient in consumer foods.[2] Authentic avocado oil possesses a distinctive fatty-acid and sterol composition that is a reliable chemical fingerprint distinguishing it from other oils. Researchers extracted the oil from the Products and determined that the oils lacked the chemical composition of authentic avocado oil and instead exhibited chemical profiles consistent with other oils.[3]

11. Indeed, independent testing made clear that the Products contain a diluted blend of oils, as opposed to exclusively "Avocado Oil."

12. Whether Defendants' representation that "Avocado Oil" is the Products' sole oil ingredient is deceptive is judged by whether it would deceive or mislead a reasonable person.

13. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains multiple oils, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

[2] https://www.sciencedirect.com/science/article/pii/S2772502226007274

[3] *Id.*

14. Discovering that there are multiple oil ingredients requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. The reasonable consumer would not understand (nor are they expected to understand) that there is a mix of oils and not exclusively “Avocado Oil.”

15. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products are made with “Avocado Oil” as the only oil.

16. Defendants failed to disclose that the Products contain a blend of oils rather than avocado oil as the exclusive oil. A reasonable consumer understands Defendants' "Avocado Oil" representations to mean that avocado oil is the Products' exclusive oil.

17. Defendants have thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

18. Consumers rely on label representations and information in making purchasing decisions.

19. The exclusive marketing of the Products "Avocado Oil" in a prominent location on the label of the Products, throughout the Class Period, evidences Defendants' awareness that "Avocado Oil" claims are material to consumers.

20. Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

21. Plaintiff and the Class Members reasonably relied, to their detriment, on Defendants' misleading representations and omissions.

22. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

23. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for Products labeled as "Avocado Oil" over comparable products not so labeled.

24. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendants represented;

b. Paid a premium price for Products that were not what Defendants represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

d. Were deprived of the benefit of the bargain because the Products

they purchased had less value than what Defendants represented;

e. Ingested a substance that was of a different quality than what Defendants promised; and

f. Were denied the benefit of the beneficial properties of the foods Defendants promised.

25. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased.

26. Plaintiff and the Class Members paid for Products exclusively claiming "Avocado Oil" but received Products that contain various oils. The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

27. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a citizen of the state of New York, Defendants Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. and Utz Brands, Inc. are citizens of the state of Pennsylvania; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29. This Court has personal jurisdiction over Defendants because Defendants conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

30. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

31. Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York. Plaintiff purchased the Products during the Class Period at retail stores in New York, including Long Island, New York, during the class period. The packaging of the Products Plaintiff purchased contained the representation that they exclusively contained "Avocado Oil." Plaintiff believes that products that are labeled as exclusively containing "Avocado Oil" do not contain other oils. If the Products actually did contain only Avocado Oil and not a diluted blend of oils, as represented on the Products' labels, Plaintiff would purchase the Products in the immediate future.

32. Had Defendants not made the false, misleading, and deceptive representation that the Products exclusively contain "Avocado Oil," Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less

than the Products for which he paid. Plaintiff was injured in fact and lost money because of Defendants' improper conduct.

**Defendants**

33. Defendant, Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. is a Delaware corporation with its principal place of business in Hanover, Pennsylvania. Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. is authorized to do business in New York. Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. is a subsidiary of the Utz Brands, Inc. conglomerate and distributes its products, including the Product, throughout the United States. Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc. has a line of food products including the honey wheat pretzels product purchased by Plaintiff and Class Members, which are available at retail stores and online throughout New York and the United States.

34. Defendant, Utz Brands, Inc. is a Delaware corporation with its principal place of business in Hanover, Pennsylvania. Utz Brands, Inc. is the manufacturer and/or distributor of the Product, and is the parent company of Utz Quality Foods, LLC f/k/a Utz Quality Foods, Inc.

35. Defendants' manufacture, market, advertise, and distribute the Product throughout the United States. Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Product.

## CLASS ALLEGATIONS

36. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

37. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

38. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

39. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

40. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

42. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c. Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d. Whether Defendants' false and misleading statements concerning its Products were likely to deceive the public;

e. Whether Plaintiff and the Class are entitled to injunctive relief; and

f. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

43. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

45. Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into

individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

46. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive (if not totally impossible) to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase its Products as exclusively containing "Avocado Oil."

47. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE CLASS RELIEF**

48. Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in its Products. Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they did exclusively contain Avocado Oil and did not contain a diluted blend of oils.

49. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality,

and adequacy because:

a. Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendants' Products have been purchased by thousands of people throughout the United States;

b. Commonality: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendants to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

   i. Resolution of the issues presented in the 23(b)(3) class;

   ii. Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive products marketing and labeling; and

   iii. Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel its Products as exclusively containing "Avocado Oil?"

c. Typicality: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive

Class, he purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

d. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

e. Superiority: An injunctive class is superior to individual relief because it will allow for resolution while avoiding the unnecessary duplication of efforts and expense that numerous individual actions engender.

50. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed did not contain a diluted blend of oils.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

51. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

52. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

53. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

54. There is no adequate remedy at law.

55. Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

56. Defendants' improper consumer-oriented conduct (including labeling and advertising the Products as exclusively containing "Avocado Oil") is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

57. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that (contrary to Defendants' representations) contained a diluted blend of oils, as opposed to "Avocado Oil." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

58. Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

59. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

60. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

61. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

63. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

64. Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products exclusively contain "Avocado Oils."

65. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which (contrary to Defendants' representations) contain a diluted blend of oils. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

66. Defendants' advertising, packaging, and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

67. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

68. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

69. Defendants made the material misrepresentations described in this Complaint in Defendants' advertising and on the Products' packaging and labeling.

70. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

71. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

72. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products exclusively contain "Avocado Oils."

74. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

75. These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

76. Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

77. Within a reasonable time after he knew or should have known of Defendants' breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of its breach, giving Defendants an opportunity to cure its breach, which it refused to do.

78. Defendants thereby breached the following state warranty laws:

a. Code of Ala. § 7-2-313;

b. Alaska Stat. § 45.02.313;

c. A.R.S. § 47-2313;

d. A.C.A. § 4-2-313;

e. Cal. Comm. Code § 2313;

f. Colo. Rev. Stat. § 4-2-313;

g. Conn. Gen. Stat. § 42a-2-313;

h. 6 Del. C. § 2-313;

i. D.C. Code § 28:2-313;

j. Fla. Stat. § 672.313;

k. O.C.G.A. § 11-2-313;

l. H.R.S. § 490:2-313;

m. Idaho Code § 28-2-313;

n. 810 I.L.C.S. 5/2-313;

o. Ind. Code § 26-1-2-313;

p. Iowa Code § 554.2313;

q. K.S.A. § 84-2-313;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-313;

t. Md. Commercial Law Code Ann. § 2-313;

u. 106 Mass. Gen. Laws Ann. § 2-313;

v. M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll. 13 Pa. Rev. Stat. § 72-3130;

mm. R.I. Gen. Laws § 6A-2-313;

nn. S.C. Code Ann. § 36-2-313;

oo. S.D. Codified Laws, § 57A-2-313;

pp. Tenn. Code Ann. § 47-2-313;

qq. Tex. Bus. & Com. Code § 2.313;

rr. Utah Code Ann. § 70A-2-313;

ss. 9A V.S.A. § 2-313;

tt. Va. Code Ann. § 59.1-504.2;

uu. Wash. Rev. Code Ann. § 6A.2-313;

vv. W. Va. Code § 46-2-313;

ww. Wis. Stat. § 402.313; and

xx. Wyo. Stat. § 34.1-2-313.

79. Defendants breached the express warranty because the Products contain a diluted blend of oils.

80. As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

81. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

83. Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

84. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

85. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

86. Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class Members' overpayments.

87. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendants from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: August 20, 2026

**SULTZER & LIPARI, PLLC**

By: /s/ Jason P. Sultzer

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.
134 Mineola Blvd
Mineola, NY 11501
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

**BRYSON HARRIS SUCIU DEMAY PLLC**
Nick Suciu, Esq.
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-2180
nsuciu@brysonpllc.com

*Counsel for Plaintiff and the Class*